Opinion op the Court.
THIS was an ejectment brought by the heirs and representatives of Patrick Shields, deceased, to recover the possession of atract of land in the county of Henry, the legal title whereof is asserted by them, under a patent for 2000 acres which issued from the state 6f Virginia, in 1786, to the decedent, Patrick Shields.
The trial was had in the circuit court on the general issue, and after a verdict' was found for the heirs of Shield's, a motion was made by Botts, -&c. for a new trial; but the motion was overruled, and judgmteht'reh-dered in conformity with the verdict in favor of the heirs. 1,1 ■
One of the grounds upon which the new trial was asked, is, that of the verdict being contrary to evidence; and it is upon the sufficiency of The evidence to maintain the Verdict that the cause must turn in this court, -
The evidence shews conclusively, that the plaintiffs in the circuit court are entitled to'ah the right which was conferred upon their ancestor, Patrick Shields, by the patent from the state of Virginia in 17'86, and were there no other patent for the same land of elder date than that to Shields exhibited in the record, we should have no hesitation in sustaining the verdict of the jury* . But the appellants, who were defendants in the circuit court, appear to have given in evidence two othei? piUents/one to James Taylor and the other to Sama ell)] dh a in, and both of which are elder in date than that to Shields. As respects the patent to Taylor* the evidence is not clear whether or not it covers any part of the land in contest; but the proof is conclusive that the póssessió;nsi.of all the appellants, exceptAwo, ■áte contained jyithiri the boundary of Oldham’s Tó so much of me land in contest, therefore, asfihwon-tained, within Oldham’s.patent the heirs of Shields cannot, through the patent of their ancestor, have acquired *34 the legal right of entry, and consequently to that extent ought not to have obtained a verdict, unless the appellants are concluded by something in the record from defending their possessions under Oldham’s patent.
A possession taken under foSTand^on-tinucd for ¿twenty years veltTthepos-sossors with the legal title patentee.041
Where possession is la-'uHor^atcut and continuos adversely for thetanantbe-comes invest-edfor the, ju-with'thcTütle of the older patentee. But where wasPtaken°n originally un-deraclaim aLfadvowe111 to both, and the possessor aftcrwar<is w;ththcju-nior patentee c“as(Tof hi3 supil ° oontraci will' time takingpos-session, so as possession the possession of the junior pa~
*34 1. The patent of Oldham, no doubt, Co'uld furnish no objection to a recovery by the heirs, if, as was contended in argument,-the heirs and those through whom they claim had been possessed of the land adversely to that patent for twenty years previous to their being ou3tcd by the appellants; for in that case, in eonse-quence of the possession of twenty years the heirs would have been invested with the title of Oldham-, and Upon the strength of that title, and not in virtue of any Hght which was conferred on their ancestor by the subsequent patent to him, they would be entitled to recover the possession from the appellants. But we have been unable to discover the evidence from which the jury might have inferred that the heirs of Shields, and those through whom they claim, were ever possessed of the land in contest, for twenty years. It is proved that Botts, one of thte appellants, held the possession of the land claimed by him adversely to ihe patent of Oldham for more than twenty years before the scat was commenced; but, we apprehend, that possession must be construed not to inure to the benefit of the heirs, but to confer upon Botts the right of entry which by the lapse of time Oldham lost.
2. The heirs might have derived the benefit of that possession, if Botts had received the possession from Shields and continued that possession under an execu-t°ry contract with Shields fof the purchase of the land, In that c'ase, after receiving from Shields the possession, Botts, só long as Shields or his heirs was looked to for a P61'*®0^011 °* the title, would be understood to bold tbe possession of Shields and not to hold adverse to the claim of Shields, and in a contest with Shields or his ^ie^rs ^01’ ^ie p-,ssession, Botts would not be permitted lo set UP an out-standing title in any other. It would seem, therefore, to follow, that whatever effect such a possession might produce on the title* of any stranger ought 1° inure to the benefit of the person from whom the possession was received, and Under whom it was continued to be holdcn. But in this case, Botts apPears not have received the possession from Shields of any person- claiming under him. He entered upon *35 the land under a claim adverse to both Shields and Old-ham, and although he afterwards contracted with one of Shields’ heirs for the claim of Shields, that contract, we suppose, ought not to be'construed to convert Botts 'into a tenant of the heirs, of give to the heirs the benefit of the possession which was taken bv him adverse to their claim* To give such an operation to the contract, instead of a contract such as.it was most probably intended by the parties, to quiet the possession against the claim of the heirs, would be translating it into a sale of the possession by Botts and an agreement 'on his part to. be the tenant of the heirs. Under the circumstances of the present case, therefore, Botts must be considered as having, by the length of his possession, gained the title of Oldham, and for the purpose of proving that title, it was clearly competent for him in connection with the evidence of possession, to introduce the patent of Oldham on the trial'.
A plaintiff in r6r cover, unless-bp shows in try. therefore,itis-com-. ^gj^dantto show,ihat the land is covered by an because1 that’ disproves the plaintiff’s There can bobut-one right of entry ^¡loleofthat passes by the patent of then ^^to tho {¡rst patentee., consequcnt¡y, no right of. a‘ny subsequent patentee; because, at the . date of such patent, no such right tyas in the commonwealth,
*35 3. But as respects the other appellants,There is evidence of their having held the possession sufficiently long to toll the right of entry which was conferred on Oldham by his patent; nor is there any priority of possession or title proved to exist between either of them and Oldham or any of the heir's of Shields., They must, however, from the evidence, be admitted to he strán-gers to the claim of both Oldham and the \heirs of Shields, and the doctrine is fully settled, by repeated adjudications of this court, that a defendant in an ejectment may defend his possession by shewing a patent to a stranger of elder date than that under which the plaintiff claims. The propriety of permitting a defendant to introduce evidence of such a patent, is apparent írom the nature of the title which must be held by a pfaihtiff in an ejectment to enable him to recover. Tfi^-jjlaintiff must hold and prove a title of entry, and whatever,conduces to disprove such a title, is admissible evidence-for the defendant. There can exist at the same time but one title of entry, and that resides in the commonwealth until she grant the land; but whenever she makes her grant, the title of entry becomes invested in the /grantee. After the Land is once grafpted, the commonwealth possesses no title of entry'JS^tanl; jmd, coBsequently 'pone can pass from the commonwealth tóa subsequent grantee. Proof of a prior grant from the commonwealth, therefore, as it. shews that a *36 plaintiff claiming under a junior grant bas no title of entry, must be admissible on the trial of an ejectment.
Ajudgment in ejectment rendered on ' confession, is Dot evidence against the plain tiff in another ejectment, more than a judgment on a verdict would be.
4. We are aware, that it appears from the record, that the transcripts of two records of suits in ejectments brought by the heirs of Shields against various defendants, were introduced in evidence-, and from those transcripts, verdicts and judgments appear to have been recovered by the heirs of Shields, against all the defendants thereto, except two; and those two, Lawrence Sandford and Jonathan Cropper, in proper persons,.confessed the action of the heirs, and judgment was thereon rendered against them; the heirs at the same time consenting that execution of the judgment should be stayed until a decision should be had in suits then depending in the same court, between Richard Botts, Allen Stewart and Morgan Bryant, complainants, and the heirs of Shields, defendants; and by an agreement between the heirs' and Sandford and Cropper, then en-> teicd of record, the decision to be made in that suit, was to govern them.
It also appears, by the admission of the parties to this, cause, that the present appellants and those under 'Whom they claim, are the same persons against whom the judgments were recovered by the heirs of Shields in the ejectment suits referred to. in ‘ the transcripts aforesaid; and that the suits of Botts, Stewart and Bryant against the heirs of Shields, referred to in the agreement between Sandford and Cropper and the heirs of Shields, has been determined in favor of the heirs.
The preceding facts, we do not however suppose, authorised the finding of a verdict against the appellants, or justified the decision of the circuit court, ito refusing to award a new trial.
Ifa verdict and judgment in ejectment, were concluí sive evidence between the same parties in a subsequent contest, drawing in question the same title, the recovery by the heirs in the suits formerly brought by them, against the present appellants, and those under whom they now claim, would have warranted the verdicj; in this case; but the doctrine is well settled, that neither, a verdict nor judgment in an ejectment concludes the parties from questioning the title in any subsequent contest about the sapie title; and if we are correct in supposing, that the evidence 1 in the presen], *37 record proves the title not to be in the heirs, the ver-diet should have been against them, though in former suits they may have recovered both verdicts and judgments against all the appellants who were defendants in this action in the court below.
Equitable matter is no d-e!eNe an ejec ■en ’
Nor do we suppose the confession of judgment by Sandford, and Cropper, is entitled to more conclusive operation, than if it had been rendered on the verdict of a jury. It was, nevertheless, but a judgment in an ejectment cause, and entitled to no greater credence than if rendered upon the verdict of a jury, found after a full discussion and examination of the evidence of each P arty. ,
5. With respect to the agreement which Sandford and Cropper made with the heirs of Shields, to be governed by the decision which might be made in tire suits of Botts, &c. against the heirs, it is sufficient to remark, that the suits alluded to were depending in chancery, and the parties must be understood by their agreement as having in view decisions to be made in those gases upon equitable principles, and whatever effect might be given to that, agreement, in a contest about the equitable right to the land, none should be given to it in a contest at law where the legal title only can be drawn in question.
Upon the whole, we think the verdict is contrary to the law and evidence of the case, and that a new trial should have been awarded by the court below.
The judgment must, consequently, be reversed with costs, the cause remanded to the court below, and further proceedings there had not inconsistent with- this opinion.